UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| R&R STAMFORD CONVENIENCE MART CORP, SAHDEV LLC, JEET LLC, PARAM JOT LLC, NAKUL LLC, RICHARDS AVE LLC,<br>    *Plaintiffs*,<br><br>v.<br><br>WILTON MOTIVA ASSOCIATES LLC, ATLANTIS MANAGEMENT GROUP II INC., ATLANTIS MANAGEMENT GROUP LLC, CONNECTICUT DEALER STATIONS LLC, WHOLESALE FUEL DISTRIBUTORS CT, LLC,<br>    *Defendants*. | No. 3:21-cv-00735 (KAD)<br><br><br><br><br><br>June 23, 2021 |

**MEMORANDUM OF DECISION RE: DEFENDANTS'
EMERGENCY MOTION TO DISCHARGE LIS PENDENS (ECF NO. 9)**

Kari A. Dooley, United States District Judge:

  Pending before the Court is an emergency motion filed by Defendants Wilton Motiva Associates LLC ("Wilton Motiva"), Atlantis Management Group II Inc., Atlantis Management Group LLC, Connecticut Dealer Stations LLC, and Wholesale Fuel Distributors CT, LLC (collectively, the "Defendants") to discharge lis pendens filed by Plaintiffs R&R Stamford Convenience Mart Corp, Sahdev LLC, Jeet LLC, Param Jot LLC, Nakul LLC, and Richards Ave LLC (collectively, the "Plaintiffs") against six Connecticut properties on which the Plaintiffs operate gas service stations. Defendants seek to discharge the lis pendens in advance of a closing on a packaged sale that includes, but is not limited to, the subject properties, which is scheduled to take place on June 30, 2021. On June 21, 2021, the Court held a hearing on the Defendants' motion at which the parties presented oral argument. For the reasons that follow, the motion to discharge the lis pendens is DENIED.

1

**Background and Allegations**

According to the allegations in Plaintiffs' First Amended Complaint (the "FAC," ECF No. 12-1), the Plaintiffs were parties to a franchise supply agreement with Wilton Motiva, Connecticut Dealer Stations LLC, and Wholesale Fuel Distributors CT, LLC (collectively, the "Franchisor Defendants"), under which Plaintiffs leased and operated certain gas service station businesses that sold motor fuel under the "Shell" trademark in Connecticut.[1] (FAC ¶¶ 5, 16.) On April 15, 2021, the Franchisor Defendants informed Plaintiffs that they had contracted to sell the premises on which Plaintiffs' businesses are operated. (*Id.* ¶ 6.) Plaintiffs later discovered that Defendants Atlantis Management Group LLC and/or Atlantis Management Group II Inc. (collectively, the "Buyer Defendants") were the buyers under those contracts. (*Id.* ¶ 7.)

The Franchisor Defendants conveyed to Plaintiffs a Right of First Refusal ("ROFR") Notice dated April 15, 2021, which offered Plaintiffs the opportunity to acquire their respective properties "as-is" and subject to due diligence for a certain cash price that the Franchisor Defendants determined to be an acceptable bona fide offer.[2] (*Id.* ¶¶ 8–10; Ex. A, ECF No. 12-2.) The ROFR Notice cited Conn. Gen. Stat. § 42-133mm(c)(2) and the Petroleum Marketing Practices Act, 15 U.S.C. § 2802(b)(3)(D). (*Id.* Ex. A.) Plaintiffs were afforded 45 days under the ROFR Notice to accept or reject the terms of the bona fide offer. (*Id.*) On May 28, 2021, Plaintiffs notified Wilton Motiva, through counsel, that Plaintiffs were "exercising their right of first refusal under the same terms and conditions as the offer which Wilton Motiva Associates LLC has found to be an acceptable bona fide offer and subject to the same due diligence and other terms set forth in that offer which they have not yet seen." (*Id.* Ex. B, ECF No. 12-3.) Plaintiffs Sahdev LLC,

---

[1] Although the franchise agreements are not attached to the FAC nor included in the present record the parties do not dispute the existence of the agreements.

[2] The dollar amount of the offer is redacted in the ROFR Notice attached to the complaint and Plaintiffs represent that Exhibit A is an "exemplar" of the ROFR Notice that each of the Plaintiff-Dealers received. (FAC ¶ 8.)

2

Nakul LLC, Richards Ave LLC, and R&R Stamford Convenience Mart Corp also submitted deposits to First American Title Insurance Company to be held in escrow pending the closing. (*Id.* ¶ 56; Ex. C, ECF No. 12-4.)

The ROFR Notice provided for a closing date to take place "thirty (30) days after the expiration of the Due Diligence Date or such date set by Seller at its sole discretion provided same is not earlier than thirty (30) days after the expiration of the Due Diligence Period." (*Id*. Ex. A.) However Plaintiffs claim that they were not advised of the time period for due diligence and that counsel was subsequently "advised that there would be no due diligence period." (*Id.* ¶ 13.) Plaintiffs also claim that they were not provided a copy of the bona fide offer that they were asked to accept or reject. (*Id.* ¶ 12.) Thus, Plaintiffs assert that "the ROFR Notice is facially deficient." (*Id.* ¶ 15.) Yet Plaintiffs simultaneously, and somewhat contradictorily, assert that they in fact accepted the offer contained in the ROFR Notice and that the Franchisor Defendants subsequently refused to honor it and have instead demanded that Plaintiffs accept an offer with terms inferior to that which was tendered to the Buyer Defendants. (*Id.* ¶¶ 57–62.) They also claim that Defendants have taken the position that once the transaction is complete the Franchisor Defendants will no longer be required to satisfy their obligations under the franchise supply agreements and that Plaintiffs cannot be assured that the Buyer Defendants will satisfy the Franchisor Defendants' obligations to Plaintiffs under those agreements. (*Id.* ¶¶ 20–21.)

Based on the foregoing Plaintiffs assert claims against the Defendants for: a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110b *et seq.* (Count One); breach of the franchise agreements (Count Two); violation of the covenant of good faith and fair dealing (Count Three); breach of the statutory right of first refusal guaranteed by the Connecticut Petroleum Franchise Act ("CPFA"), Conn. Gen. Stat. § 42-133mm (Count Four); violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801 *et seq.* (Count

Five); and breach of the contract for the right of first refusal, for which Plaintiffs seek, *inter alia*, an order of specific performance (Count Six). Plaintiffs simultaneously filed lis pendens on six properties that are subject to the sale—specifically, the properties located at: (1) 247 Main Street, Norwalk, Connecticut; (2) 551 Main Avenue, Norwalk, Connecticut; (3) 899 High Ridge Road, Stamford, Connecticut; (4) 912 Danbury Road, Wilton, Connecticut; (5) 1033 Hope Street, Stamford, Connecticut a/k/a 1039 Hope Street, Stamford, Connecticut; and (6) 3232 Post Road, Southport, Connecticut (collectively, the "Lis Pendens Properties"). Defendants now move to discharge the lis pendens in advance of the scheduled June 30, 2021 closing on the Lis Penden Properties.

**Legal Standard**

Pursuant to Conn. Gen. Stat. § 52-325(a), a plaintiff in any action that "is intended to affect real property" brought in a Connecticut or federal court "may cause to be recorded in the office of the town clerk of each town in which the property is situated a notice of lis pendens," which serves, upon its recording, as "notice to any person thereafter acquiring any interest in such property of the pendency of the action; and each person whose conveyance or encumbrance is subsequently executed or subsequently recorded or whose interest is thereafter obtained, . . . shall be deemed to be a subsequent purchaser or encumbrancer, and shall be bound by all proceedings taken after the recording of such notice, to the same extent as if he were made a party to the action." The purpose of a notice of lis pendens is therefore "to put potential buyers of the real estate and creditors of its owners on notice that the real estate may be subject to pending adverse interests that may affect the title or right to the property." *Garcia v. Brooks St. Assocs.*, 209 Conn. 15, 22, 546 A.2d 275 (1988).

Following the recording of a notice of a lis pendens, the property owner may make a motion "that a hearing or hearings be held to determine whether such notice of lis pendens should be

discharged." Conn. Gen. Stat. § 52-325a(a). Upon such a hearing, "the plaintiff shall first be required to establish that there is probable cause to sustain the validity of his claim." *Id.* § 52-325b(a). The Court "may: (1) Deny the application or motion if . . . probable cause to sustain the validity of the claim is established . . . or (2) order such notice of lis pendens discharged of record if . . . probable cause to sustain the validity of the plaintiff's claim is not established." *Id.* § 52-325b(b).

The Connecticut Appellate Court has cautioned that under this standard, "the plaintiff does not have to establish that he will prevail, only that there is probable cause to sustain the validity of the claim." *Donenfeld v. Friedman*, 79 Conn. App. 64, 68, 829 A.2d 107 (App. Ct. 2003) (quoting *Cadle Co. v. Gabel*, 69 Conn. App. 279, 286, 794 A.2d 1029 (App. Ct. 2002)). "The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." *Id.* (quoting *Cadle Co.*, 69 Conn. App. at 286–87).

> This probable cause hearing is not a trial on the merits, nor is it intended as such. The plaintiff need not establish his claim by a preponderance of the evidence. The court, while not making a final decision on the merits, weighs the testimony given and the documentary proof presented. The trial court's duty is to weigh the probabilities based on the facts and to exercise its broad discretion in determining whether there is probable cause to sustain the lis pendens.

*Sanstrom v. Strickland*, 11 Conn. App. 211, 212, 525 A.2d 989 (App. Ct. 1987).[3]

---

[3] Plaintiffs cite *Manaker v. Manaker*, 11 Conn. App. 653, 661, 528 A.2d 1170 (App. Ct. 1987), for the proposition that the lis pendens statute "should be liberally construed to implement reasonably and fairly its remedial intent of giving notice of claims pertaining to the real property which is the subject of the litigation." However this statement was made in the context of interpreting the notice provision of the statute, not the probable cause standard.

Plaintiffs also cite *Jansen v. Pontillo*, 2008 Conn. Super. LEXIS 1390, at *5 (Conn. Super. Ct. June 3, 2008), for the notion that "Connecticut courts have interpreted [the statutory] language as requiring the denial of motions to discharge a lis pendens where the courts' disposition of the main cause of action could affect in some manner an interest in property." (quoting *F.D.I.C. v. Isban*, 870 F. Supp. 24, 29 (D. Conn. 1994)). Plaintiffs therefore argue that

5

**Discussion**[4]

Defendants first argue that Plaintiffs cannot establish probable cause to sustain the validity of their claims because their entire lawsuit is premised on the erroneous belief that the Franchisor Defendants were statutorily required to offer Plaintiffs a right of first refusal with respect to the sale of the Lis Penden Properties. Defendants argue that the ROFR was not required under the text of the PMPA or the CPFA despite the citations to these statutes in the ROFR Notice and that the Franchisor Defendants instead offered the ROFR to Plaintiffs out of an abundance of caution and as a matter of good faith. They further assert that Plaintiffs' claim that the closing of the pending sales transactions will effectively terminate Plaintiffs' rights under their respective franchise agreements is based on pure speculation and otherwise does not give rise to a cognizable claim under the PMPA or the CPFA. Defendants also argue that Plaintiffs' claims for breach of the franchise supply contracts and for a violation of CUTPA are legally insufficient.[5] Because the Court agrees with the Plaintiffs that there is probable cause to sustain the claim alleged in Count Six of the FAC—breach of contract under the ROFR, and the commensurate request for an order of specific performance—irrespective of whether Defendants were statutorily obligated to tender

---

because "a disposition of the main cause of action in favor of the plaintiff[s] would manifestly affect the interest in the subject properties," this Court is "required to deny the motion." (Pls.' Mem. at 13.) Such statements from the caselaw, however, were made in the context of deciding whether an action is one "intended to affect real property" within the meaning of Conn. Gen. Stat. § 52-325(b) so as to sustain the filing of the notice of lis pendens as a threshold matter. Here, the parties do not dispute that this statutory predicate is satisfied and the Court declines to interpret the applicable standard of review as necessitating denial of a motion to discharge lis pendens whenever adjudication of the underlying dispute would affect an interest in the subject property—a prerequisite which would be met in virtually every case where the filing of a notice of lis pendens is procedurally proper.

[4] The parties agreed that the documents attached to their submissions constitute the evidentiary record upon which the Court should determine the existence (or lack thereof) of probable cause. Accordingly, no additional testimony or exhibits were introduced at the hearing.

[5] The Plaintiff filed the FAC after the Defendants filed the instant motion. Therein, Plaintiffs added a breach of contract claim and request for specific performance alleging that the Plaintiffs accepted the ROFR and the Defendants have breached the contract formed as a result. Although this claim was not addressed in the Defendants' moving papers, Defendants' counsel did respond to this claim in detail during the hearing.

the ROFR in the first instance, the Court does not reach Defendants' other arguments at this juncture.[6]

"[A] right of first refusal is known more technically as a preemptive option, as a right of preemption, or simply as a preemption." *Tadros v. Middlebury Med. Ctr., Inc.*, 263 Conn. 235, 240, 820 A.2d 230 (2003) (quotation marks and citation omitted). "A right of pre-emption is a right to buy before or ahead of others; thus, a pre-emptive right contract is an agreement containing all the essential elements of a contract, the provisions of which give to the prospective purchaser the right to buy upon specified terms." *Id.* (citation omitted).

> To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. So long as any essential matters are left open for further consideration, the contract is not complete. A court may, however, enforce an agreement if the missing terms can be ascertained, either from the express terms or by fair implication.

*Saint Bernard Sch. of Montville, Inc. v. Bank of Am.*, 312 Conn. 811, 830, 95 A.3d 1063 (2014) (quotation marks, ellipses, and citations omitted). Similarly, "[t]o be effective, an acceptance of an offer under an option contract must be unequivocal, unconditional, and in exact accord with the terms of the option. . . . The determination of the terms and conditions of the option contract must be resolved, in the absence of supplementary evidence of the intent of the parties, by reference to the terms of the contract itself." *Bayer v. Showmotion, Inc.*, 292 Conn. 381, 409, 973 A.2d 1229 (2009) (quotation marks and citation omitted). "Parties, however, may form a binding contract even if some nonessential terms of their agreement are indefinite or left to further negotiations," and "this rule applies with equal vigor where a party exercises an option." *Id.* at 411, 412. "In Connecticut, the essential terms of a contract for the sale of real property include the parties, a

---

[6] The Defendants indicated their intention to assert these and other defenses to the Plaintiffs' claims by way of a motion to dismiss, which the Court will take up in due course.

7

description of the subject of the sale, and the terms of payment, including a basis for determining the total purchase price and the amount, if any, of the purchase money mortgage." *Id.* at 412–13.

Here, the ROFR Notice identified the parties, the location of the property for sale, and a specific cash purchase price, thus setting forth the contract's "essential terms." (*See* FAC Ex. A.) The exemplar ROFR Notice was also signed by the President of Wilton Motiva's Managing Member, 372 Managers, Ltd., Leon Silverman. As noted previously it further provided:

> This bona fide offer includes the purchase of the Premises "as is," subject to due diligence. The closing date shall be on or about thirty (30) days after the expiration of the Due Diligence Date or such date set by Seller at its sole discretion provided same is not earlier than thirty (30) days after the expiration of the Due Diligence Period. Time is of the essence.

(*Id.*) The ROFR Notice further stated that Plaintiffs were permitted 45 days to accept or reject the terms of the bona fide offer, and if Defendants "do not receive a response from you before the forty-five day deadline, May 31, 2021, we shall deem the Right of First Refusal rejected." (*Id.*) It instructed Plaintiffs to notify Wilton Motiva of their intent to exercise the ROFR before this deadline and to include a down payment of ten percent by certified or bank check payable to the Defendants' escrow attorney. (*Id.*) On May 28, 2021 Plaintiffs sent a letter to Wilton Motiva via counsel and by certified mail which advised that Plaintiffs were "exercising their right of first refusal under the same terms and conditions as the offer which Wilton Motiva Associates LLC has found to be an acceptable bona fide offer and subject to the same due diligence and other terms set forth in that offer which they have not yet seen." (FAC Ex. B.) And as directed, Plaintiffs submitted deposits to be held in escrow pending the closing.[7] (*Id.* ¶ 56; Ex. C.)

---

[7] Counsel for all parties agreed at the oral argument that four Plaintiffs submitted timely deposits and two Plaintiffs submitted their deposits late. However, the Defendants do not assert any claims based upon the untimely nature of two of the deposits received.

At the hearing, the Defendants acknowledged that the ROFR Notice constituted a valid offer. And there is no dispute that the Plaintiffs purported to accept the offer within 45 days of receipt of the ROFR Notice. However the Defendants argued that the offer was not accepted because the Plaintiffs failed to comply with the offer's specific terms—namely an agreement to close by the end of the month and acceptance of the prescribed due diligence period.[8] Absent acceptance, Defendants argue, no contract was formed and no interest in the properties was created so as to sustain the lis pendens. Plaintiffs, on the other hand, argued that they did in fact accept all of the terms of the ROFR and that the parties' dispute was attributable not to their lack of acceptance but, rather, to the Defendants' subsequent failure to honor the terms and conditions of the ROFR Notice by agreeing to close on the same terms as those provided to the Buyer Defendants. Accordingly, Plaintiffs assert they have a valid contract to purchase the Lis Pendens Properties. Indeed, Plaintiffs represented that they stand ready and willing to close on the purchase of their respective properties, subject to the Defendants honoring their obligations to the Plaintiffs under the ROFR Notice, *i.e.*, the provision of due diligence and the same terms and conditions offered to the Buyer Defendants. In an apparent contradiction, or at the very least an exception to the argument that no contract was formed, Defendants also asserted that they stand willing to close on the sale of the properties to the Plaintiffs, provided that any such closing is consummated on or before June 30, 2021.

In short, both parties agree that the ROFR Notice was a valid offer to sell the Lis Pendens Properties to the Plaintiffs. And with respect to those Plaintiffs able to close on the transaction by June 30, 2021, the parties agree that the offer has been accepted. This alone is sufficient to establish probable cause for the validity of the Plaintiffs' claims at Count Six. As for those

---

[8] Notably, the ROFR Notice did not include a closing deadline of June 30, 2021.

9

Plaintiffs who are not able or willing to close by that date, the factual issues in dispute do not require a finding that no valid contract was formed, as Defendants contend. *See Donenfield*, 79 Conn. App. at 69–70 (concluding "that it was not clearly erroneous for the court to find the agreement sufficient to establish probable cause to sustain the minimum requirements for a binding contract for the sale of real property" where the agreement included the contract's "essential elements" and complied with the statute of frauds, notwithstanding seller's argument that the contract was a non-binding preliminary option agreement, and observing that it was not the court's responsibility to resolve the merits of the case under the standard set forth in Conn. Gen. Stat. § 52-325b(b)); *see also Bayer*, 292 Conn. at 413 ("The fact that the parties subsequently were unable to agree on the nonessential terms of the purchase and sale agreement has no bearing on the existence of a binding contract between them," if, in fact, the option agreement was appropriately exercised). Nor do the remaining factual disputes undermine a finding of probable cause for those claims. The Court therefore leaves for another day such questions as whether assent to the specific due diligence period commanded by Defendants was an essential and/or sufficiently clear contract term and whether the Plaintiffs sought to vary the terms and conditions contained in the ROFR Notice so as to defeat their acceptance of the original offer and their entitlement to specific performance.

**Conclusion**

For the foregoing reasons, the motion to discharge the lis pendens is denied.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of June 2021.

> */s/ Kari A. Dooley*
> KARI A. DOOLEY
> UNITED STATES DISTRICT JUDGE